UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Angel Luis Serrano, Jr.

    v.                                      Civil No. 10-cv-394-JL
                                            Opinion No. 2011 DNH 114

Michael J. Astrue, Commissioner,
Social Security Administration


**MEMORANDUM ORDER**

This is an appeal from the denial of a claimant's application for Social Security Disability Benefits. See 42 U.S.C. § 405(g). The claimant, Angel Luis Serrano, Jr., contends that the administrative law judge ("ALJ") incorrectly found that although he suffered from a severe impairment due to a "crush injury" to his left ankle, Admin. R. 10;[1] see 20 C.F.R. §§ 404.1520 (a),(c), he retained the residual functional capacity[2]

---

[1] The court will reference the administrative record ("Admin. R.") to the extent that it recites facts contained in, or directly quotes documents from, the record. Cf. Lalime v. Astrue, No. 08-cv-196-PB, 2009 WL 995575, at *1 (D.N.H. Apr. 14, 2009).

[2] "Residual Functional Capacity" is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR No. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

("RFC") to perform light work,[3] Admin. R. 12; see 20 C.F.R. § 404.1520(a)(4)(iv), and that given his age, education and work experience, there were a significant number of job opportunities available to him.  Admin. R. 14; see 20 C.F.R. § 404.1520(a)(4)(v); pt. 404, subpt. P, App. 2, § 202.  Serrano contends that the ALJ erred in formulating his RFC because:

> (1) the ALJ improperly relied on the RFC assessment of a non-treating consulting physician and ignored portions of the medical source statement of Serrano's treating physician that were inconsistent with a finding that Serrano was not disabled, see Cl. Br. 5, see generally 20 C.F.R. §§ 404.1502, 404.1527(d); SSR No. 96-2p, 1996 WL 374188 (July 2, 1996),
>
> (2) the ALJ's credibility determination was unsupported by the record, see Cl. Br. 7-8, and,
>
> (3) the ALJ did not properly consider Serrano's other non-severe impairments.  See id. at 9.

The Commissioner asserts that the ALJ's findings are supported by substantial evidence in the record, and moves for an order affirming his decision.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 405(g) (Social Security).  After a review of the administrative record the court grants Serrano's motion and denies the Commissioner's motion.

---

[3]The ALJ additionally limited Serrano's ability to stand and walk to a total of four hours per day.  He also concluded that Serrano could only push, pull and perform certain postural activities occasionally.  Admin. R. 12.

I.   **APPLICABLE LEGAL STANDARD**

The court's review under Section 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); see Simmons v. Astrue, 736 F. Supp. 2d 391, 399 (D.N.H. 2010).  If the ALJ's factual findings are supported by substantial evidence in the record, they are conclusive, even if the Court does not agree with the ALJ's decision and other evidence supports a contrary conclusion. See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record.  See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Pires v. Astrue, 553 F. Supp. 2d 15, 21 (D. Mass. 2008) ("resolution of conflicts in the evidence or questions of credibility is outside the court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails").  The ALJ's findings are not conclusive, however, if they were "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.  If the ALJ made a legal or factual error, the decision may be reversed and remanded to consider new, material evidence, or to apply the

3

correct legal standard. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16, 19 (1st Cir. 1996); see 42 U.S.C. § 405(g).

## II. BACKGROUND

Pursuant to this court's local rules, the parties filed a Joint Statement of Material Facts (document no. 9), which is part of the record reviewed by the court. See LR 9.1(d). This court will briefly recount the key facts and otherwise incorporates the parties' joint statement by reference.

Briefly, Serrano severely injured his left ankle on April 5, 2006 when a heavy piece of equipment fell on his leg. Admin. R. 233-36. Serrano had multiple surgeries to repair the ankle that month, see id. at 453, 463, 475, 624, including skin graft surgery on his ankle on April 11, 2006. See id. at 475-76. Serrano reportedly "did quite well until August of 2006 when he had a syndesmotic[4] screw removed" from his ankle. See id. at 624; see also id. at 267 (physical therapist commented that the outlook for Serrano's eventual recovery was positive so long as he followed up with recovery regimen); 964 (ankle surgeon, Dr.

---

[4]"Syndesmotic" refers to connective tissue, "particularly the ligaments." Dorland's Illustrated Medical Dictionary, 1845-46 (31st ed. 2007).

4

Timothy Bhattacharyya, observed in June 2006 that Serrano was "doing well" with minimal pain).

Surgery to remove screws from Serrano's ankle was performed on August 8, 2006 and reportedly proceeded without incident. See id. at 588, 601. On August, 18, 2006, however, Serrano went to the emergency room with swelling and "drainage" from the site of his ankle surgery. See id. at 304. He was diagnosed with having a possible infection that appeared to respond to antibiotic treatment, and thus Serrano was released to light duty work by Dr. Bhattacharyya beginning on September 25, 2006. See id. at 988. Serrano, however, continued to have problems with potential infections at the wound site, see id. at 368, 620-23, 968, and he had further surgery in November 2006 to remove most of the hardware in his ankle and clean out possible infections. See id. at 624, 868, 878-79. Serrano was referred to an infectious disease specialist, Dr. Benjamin Linas, who indicated that the "removal of hardware and washout" included a surgical "debriding[5] down to bone." See id. at 940-41. Although Serrano was described at discharge as "ambulating without difficulty," see id. at 624, he spent many weeks receiving intravenous antibiotics

---

[5]"Debridement" is "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed." Dorland's Illustrated Medical Dictionary, 481 (31st ed. 2007).

at in an inpatient rehabilitation center.  See id. at 637-38, 865.  He was finally released from inpatient care on December 15, 2006.  See id. at 636.

Although Serrano subsequently returned to work, see id. at 1054, he went to Eliot Hospital in June 2007 for treatment of an infection at the site of his skin graft which was diagnosed as "cellulitis[6] of [the] leg."  See id. at 328.  Serrano continued to have difficulty at the wound site, and on June 13, 2007, Dr. Bhattacharyya observed that after Serrano "returned to more aggressive activities," he experienced "a lot of serous weeping from the wound," and that "clearly the skin graft has not been durable enough to hand[le] his level of activity."  See id. at 994.

Serrano was eventually referred to Dr. John Yost, a rheumatologist.  See id. at 1015.  Dr. Yost diagnosed Serrano with "advanced limitation in motion of the left ankle consistent with post-traumatic osteoarthritis."  See id. at 1016-17.  Dr. Yost recommended that Serrano take Prednisone given that he had

---

[6]"Cellulitis" is "an acute, diffuse, spreading, edematous, suppurative inflammation of the deep subcutaneous tissues, . . . usually caused by infection of a wound, burn, or other cutaneous lesion by bacteria."  Dorland's Illustrated Medical Dictionary, 330 (31st ed. 2007).

6

an "excellent response" to steroid treatments in the past.[7]  See id. at 1016.  Serrano reportedly responded well to the steroid treatment and on August 7, 2007, Dr. Yost recommended a "[w]ork release for light duty, primarily supervisory activities.  He will need to continue to limit prolonged walking, standing, [and] repetitive motion of the left ankle."  Id. at 1023.

Serrano's symptoms returned, however, in September 2007 after he ceased taking steroids.  Dr. Yost accordingly resumed Serrano's steroid therapy.  See id. at 1024.  Dr. Yost later noted that by October 16, 2007, Serrano's issues at the wound site had stabilized even though Serrano had lingering pain and stiffness in his ankle.  See id. at 1027.  Serrano continued to see Dr. Yost until February 2008, when Dr. Yost noted that Serrano had "reached a medical end-point, but will need continued disease-modifying therapy to prevent relapse of psoriasiform skin lesions and/or increase in ankle or other joint synovitis."  See id. at 1041.  A month later, Dr. Yost completed a "Medical Source Statement" indicating, inter alia, that although Serrano retained the ability to lift up to twenty pounds occasionally and ten

---

[7]"Prednisone" is a "synthetic glucocorticoid [steroid] . . . administered orally . . . as an antiinflammatory and immunosuppressant."  Dorland's Illustrated Medical Dictionary, 800, 1531 (31st ed. 2007).  Serrano was also prescribed "Plaquenil," a medicine used to treat Lupus, as it was suspected at that time that he might also suffer from that disease.  Id. at 894, 1477.

pounds frequently, because of his "left ankle osteoarthritis," he retained the maximum ability to sit, stand, and walk for only six hours per day, and needed to take unscheduled breaks throughout the workday. See id. at 1168.

Serrano filed an application for Disability Insurance in April 2008 claiming he became disabled in May 2007 due to a "crushed [left] ankle, post traumatic osteoarthritis left ankle with [psoriasiform] ulceration at the skin graft site." See Admin. R. 112-116, 131-149. Serrano reported that he was no longer able to work due to "[l]imited . . . ankle motion" and an inability to stand for a "prolonged period of time." Id. at 132. His application for benefits was denied in August 2008, id. at 46, and Serrano appealed that decision to the ALJ. Id. at 55; see generally 20 C.F.R. § 405.301. After a hearing in March 2010, see id. at 20-42, the ALJ concluded that Serrano was not disabled and thus not entitled to benefits. Admin. R. 8-15; see generally 20 C.F.R. § 404.1520.

The ALJ found that Serrano was severely impaired due to a "status post left ankle fracture." Admin. R. 10; see generally 20 C.F.R. § 404.1520(a)(4)(ii). He denied benefits, however, because he concluded that despite his impairments, Serrano maintained a residual functional capacity "to perform light work . . . except with the need to limit standing and walking to 4

hours total during the day and to limit pushing, pulling and postural activities to occasional [sic]." Id. at 12; see generally, 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1567(b).

The ALJ concluded that Serrano was unable to perform his past work as a "health club maintenance worker, forklift operator, painter and painter/supervisor." Id. at 14. Nevertheless, the ALJ determined that Serrano was not disabled because he was capable of performing light work with some limitations, and thus retains the ability to perform jobs that exist in the entire light unskilled job base. Id. at 14-15. After the Decision Review Board affirmed the findings of the ALJ,[8] this appeal followed.

## III. **ANALYSIS**

A five-step process is used to evaluate an application for social security benefits. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden through the first four steps to show

---

[8] On review, the Decision Review Board affirmed the ALJ's order, Admin. R. 1; see generally 20 C.F.R. § 405.405, rendering it a final decision of the Commissioner appealable to this court. See 20 C.F.R. § 405.420(b).

he is disabled.[9]  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner bears the burden of establishing that a claimant has the residual functional capacity to perform other work that may exist in the national economy.  Id.; see also 20 C.F.R. § 404.1520(a)(4)(v); Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The ALJ's conclusions at steps four and five are informed by his assessment of a claimant's RFC, which is a description of the kind of work that the claimant is able to perform despite his impairments.  20 C.F.R. §§ 404.1520(a)(4), 404.1545.

Serrano primarily finds fault with the ALJ's decision not to adopt the RFC assessment of his treating rheumatologist, Dr. Yost, and instead rely on the assessment of a state agency consulting physician, Dr. Hugh Fairley.  Cl. Br. 5.

On March 10, 2008, Dr. Yost completed a "Medical Source Statement" assessing Serrano's work capabilities.  Admin. R. 1168-70.  He opined that although Serrano had no limits on his

---

[9]Specifically, the claimant must demonstrate that:  (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment meets or equals a specific impairment listed in the Social Security regulations; or (4) the impairment prevents or prevented him from performing past relevant work.  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

10

ability to sit during a typical workday, he could only stand and walk less than two hours and had a maximum combined ability to sit, stand or walk of only six hours per day.  See id. at 1168. Dr. Yost also stated that Serrano would need to shift at will from sitting to standing or walking and that he would need to take unscheduled breaks during the day.[10]  See id.  Finally, Dr. Yost stated that if Serrano had a job that required "prolonged standing or walking," he would miss work more than three days per month.  See id. at 1170.

Dr. Fairley later completed a residual functional capacity form[11] in August 2008.  Admin. R. 1176-83.  In that form, Dr. Fairley stated that his opinion did not differ significantly from those offered by Serrano's treating physicians.  He then cited Dr. Yost's August 2007 work release, but not Dr. Yost's March 2008 evaluation, as supporting evidence.  See id. at 1182. Although Dr. Fairley made a number of findings similar to Dr.

---

[10] Dr. Yost also opined that Serrano was limited in his ability to crouch and squat, and that he would have to limit his exposure to heat, cold, and humidity.  See id. at 1169-70.

[11] Although Dr. Fairley's form was entitled a "Physical Residual Functional Capacity Assessment," it is in reality a "medical source statement" as only the adjudicator, not a consulting physician, can make a true RFC determination.  See SSR 96-5p, 1996 WL 374183, at *4-*5 (July 2, 1996).

11

Yost's, there were some significant variations.[12]  Compare id. at 1168-70 (Dr. Yost) with id. at 1176-83 (Dr. Fairley).  For example, both physicians opined that Serrano was capable of lifting twenty pounds occasionally and ten pounds frequently and that Serrano possessed no manipulative limitations.  Notably, however, Dr. Fairley opined that Serrano could sit for a total of six hours per day and stand or walk for a total of four hours per day, and thus function for a complete eight hour day.  Id. at 1177.  Dr. Fairley did not state that Serrano needed to be able to shift at will or take unscheduled breaks.  Compare id. at 1177 with id. at 1168.  Although there were many similarities in the physician's analyses, the differences, and the ALJ's treatment of them, form the basis of Serrano's claim of error.

In a step four analysis, the ALJ, having already determined that the claimant suffers a severe impairment, makes a determination of the claimant's current functional capacity, or RFC.  If the RFC finding is supported by substantial evidence in

---

[12] Some of these variations may be attributed to the different forms completed by each doctor.  Dr. Yost completed a "Medical Source Statement" evaluating Serrano's ability to complete work related activities, Admin. R. 1168-70, while Dr. Fairley completed a "Physical Residual Functional Capacity Assessment" form.  Id. at 1176-83.  Although both, in theory, seek to describe the same analysis (Serrano's ability to work), they vary in content, with the medical source statement requiring a more detailed explanation of a claimant's functional capacity.  Notably, neither physician offered much elaboration in the areas of the report allowing for free form comment.

the record, it is conclusive. <u>Nguyen</u>, 172 F.3d at 35. Findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." <u>Id.</u>

Determination of a claimant's RFC is an administrative decision that is the responsibility of the Commissioner. <u>See</u> 20 C.F.R. § 404.1527(e)(2), SSR 96-5p, 1996 WL 374183, at *2. An ALJ is prohibited, however, from disregarding relevant medical source opinions. <u>See</u> SSR 96-5p, 1996 WL 374183, at *5. Where an ALJ's RFC assessment is at odds with a medical source opinion, he must explain his reasons for disregarding that opinion. <u>See</u> 20 C.F.R. § 404.1527(d)(2); SSR 96-8p, 1996 WL 374184, at *7; <u>Marshall v. Astrue</u>, No. 08-cv-147-JD, 2008 WL 5396295, at *4 (D.N.H. Dec. 22, 2008) (reversing ALJ decision because treating source opinion was "simply overlooked").

In evaluating the nature and severity of an impairment, "[a] treating physician's opinion is generally afforded controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." <u>Lopes v. Barnhart</u>, 372 F. Supp. 2d 185, 193-94 (D. Mass. 2005) (quotations and brackets omitted); <u>see also</u> SSR 96-2p, 1996 WL 374188, at *1-*2; 20 C.F.R. § 404.1527(d)(2); <u>cf.</u> <u>Monroe v. Barnhart</u>, 471 F.

13

Supp. 2d 203, 211 (D. Mass. 2007)("Although opinions from treating and examining physicians may be considered helpful, and in many cases controlling, the hearing officer is only required to make a decision that is supported by substantial evidence."); 20 C.F.R. § 404.1527(d)(2).  Greater weight is given to a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)."  20 C.F.R. § 404.1527(d)(2).

   The ALJ's decision must be reversed because his treatment of Dr. Yost's medical source opinion was fundamentally flawed. Specifically, the ALJ only partially addressed Dr. Yost's medical source statement, ignoring a few key conclusions regarding Serrano's functional capabilities contradicting both the ALJ and Dr. Fairley's RFC determination.  Cf. Nguyen v. Callahan, 997 F. Supp. 179, 182 (D. Mass 1998) (an ALJ may not adopt one view of the evidence without addressing conflicts in the evidence). "[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record" if it is cumulative of evidence already discussed by the ALJ or fails to support the claimant's position. Lord v. Apfel, 114 F. Supp. 2d 3, 13 (D.N.H. 2000).  "At the same time, the First Circuit and district courts within the circuit

14

have [also] held that an ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause." Id. (citing cases).

The ALJ did mention that Dr. Yost had examined Serrano and indeed made reference to Dr. Yost's medical source statement. Admin. R. 11, 13.  But the ALJ barely analyzed key findings standing in direct contradiction to his determination that Serrano is not disabled.  Specifically, the ALJ failed to adequately discuss how Dr. Yost's conclusion that:  (1) Serrano could only sit/stand/or walk a total of six hours per day, and (2) needed unscheduled breaks throughout the day, affected his ability to work on a sustained and continuing basis.  Id. at 11, 13 (ALJ opinion), 1168 (medical source statement).[13]

These omissions are significant because the ALJ's decision was based, in part, on testimony of a vocational expert.  See id. at 15 (decision), 35-38 (testimony).  That expert, when given a hypothetical RFC matching that ultimately adopted by the ALJ, opined that there existed a number of jobs in the national economy.  See id. at 35-36.  The vocational expert was also given a hypothetical RFC by the ALJ *purportedly* matching the RFC of Dr.

---

[13]The ALJ mentioned Serrano's inability to sit/stand/walk for a full work day in his Step Two discussion of Serrano's severe impairments.  The ALJ did not, however, address this information in the context of his Step Four and Step Five analysis.  See id. at 11, 13.

Yost.  See id. at 37.  Given that scenario, the vocational expert stated that there would still be jobs available.  That hypothetical, however, was incomplete, as the ALJ never mentioned that Dr. Yost's RFC included the ability to take unscheduled breaks and that Dr. Yost limited Serrano's maximum combined sit/stand/walk capability to six hours total in an eight hour workday.  See id. at 37 (transcript), 1168 (Dr. Yost medical source statement).  Serrano's counsel later asked the vocational expert about whether, given a hypothetical similar to that posed by the ALJ, but including a maximum ability to sit/stand/walk/ of six hours, Serrano could find a job.  See id. at 38-39.  The vocational expert stated there would be no jobs available because "[t]he six-hour combination of sitting and standing and walking would be less than a full-time work capacity so there would be no jobs."  See id. at 39.[14]

---

[14]Further, Dr. Fairley grounded his RFC determination in part on Dr. Yost's August 2007 notes authorizing Serrano to return to work.  Admin. R. 1023 (Dr. Yost), 1182 (Dr. Fairley).  Those notes arguably only weakly support Dr. Fairley's RFC assessment, because although Dr. Yost released Serrano, it was in a very limited way, namely, "light duty, primarily supervisory activities, he will need to continue to limit prolonged walking, standing, repetitive motion of the ankle."  See id. at 1023.  Although not the basis for the court's decision to reverse the ALJ, such weak support does undermine the ALJ's decision to give great weight to  Dr. Fairley's RFC assessment. Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991) (reports of consulting physician that "contain little more than brief conclusory statements or the mere checking of boxes" are entitled to relatively little weight).

A court must be able to determine whether the ALJ considered contrary evidence and chose to discredit it, or whether it was "simply ignored." Lord, 114 F. Supp. 2d at 14 (quotations omitted). "For a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence, that decision must take into account whatever in the record fairly detracts from its weight." Id. (quotations omitted). Although the ALJ discussed potions of Dr. Yost's assessment supporting determination that Serrano was severely impaired, he ignored key conclusions regarding Serrano's functionality.[15] This was

---

[15] Further, the ALJ noted that he "afford[ed] the opinion of State Agency reviewing physician Dr. Fairley great weight in this case." Admin. R. 13. He only inferentially gave less weight to Dr. Yost's medical source statement, stating "Dr. Yost did release the claimant to work and has not treated him for more than a year." Id. An ALJ is required to "always give good reasons in the notice of determination or decision for the weight given to a treating source's medical opinion(s) . . . ." SSR 96-2p, 1996 WL 374188, at *5, see generally 20 C.F.R. § 404.1527(d)(2). The ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion . . . ." SSR 96-2p, 1996 WL 374188, at *5. The court concludes that the ALJ's recitation was not sufficient to satisfy the requirement that an ALJ always give "good reasons" for refusing to adopt contrary treating physician opinions. Indeed, one cannot even discern from the face of the order that Dr. Yost limited Serrano's work capabilities to six hours per day, or that he take unscheduled breaks, and why the ALJ chose to disregard those conclusions. See SSR 96-2p, 1996 WL 374188, at *5.

17

error.[16]  Cf. Brunel v. Barnhardt, No. Civ.00-402-B, 2002 WL 24311, at *8-*9 (D.N.H. Jan. 7, 2002) (ALJ cannot parse medical evidence, accepting favorable evidence and ignoring unfavorable evidence "without offering a principled reason").  The court accordingly reverses the ALJ's decision.  Serrano's remaining claims of error will not be addressed at this time, as it is unclear the extent to which they will arise on remand.[17]

---

[16]The Commissioner argues that it is irrelevant that Dr. Yost opined that Serrano could only sit/stand/walk for six hours per day because that finding directly contradicts Dr. Yost's opinion that Serrano had an unlimited ability to sit.  From the face of the ALJ's order, however, the court cannot discern the basis of the ALJ's decision to ignore the functional significance of Dr. Yost's opinion.  As such, remand is proper.  See Lord, 114 F. Supp. 2d at 14.

[17]Serrano attempts to argue that an ALJ is per se prohibited from relying on a state agency consulting physician to formulate an RFC.  There is precedent, however, allowing an ALJ to rely both exclusively on the assessments of non-testifying, non-examining physicians, see Berrios Lopez, 951 F.2d at 431-32, and on the assessment of a non-treating physician in lieu of a treating physician.  See Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 13 (1st Cir. 1982); Reeves v. Barnhart, 263 F. Supp. 2d 154, 161-62 (D. Mass. 2003).  Conflicts between treating and non-treating, non-examining doctors are for the ALJ to resolve.  Tremblay, 676 F.2d at 12.  The decision to resolve that conflict against the claimant should be affirmed if "that conclusion has substantial support in the record . . . ."  Id.; see Berrios Lopez, 951 F.2d at 431; cf. DiVirgilio v. Apfel, 21 F. Supp. 2d 76, 77 (D. Mass. 1998).

## IV. CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), Serrano's motion to reverse and remand the Commissioner's decision[18] is granted.  The Commissioner's motion to affirm the decision[19] is denied.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  July 15, 2011

cc:  Davis S.V. Shirley, Esq.
     T. David Plourde, Esq.

---

[18] Document no. 7.

[19] Document no. 10.